MOUNT v. DILLON.

4-5842                                     138 S. W. 2d 59

Opinion delivered March 18, 1940.

*Cotton & Murray,* for appellant.

MEHAFFY, J. The appellants instituted this action in the Boone chancery court alleging that they were owners of certain lands described, and that the appellees have cut and destroyed and are threatening to cut and destroy the fences of appellants along the line set forth in the complaint, and that unless they are restrained by the

court they will continue to cut and destroy said fences without legal right to do so, and that the appellants will suffer irreparable damages; prayed for a restraining order and general relief.

The following is an agreed statement of facts: "It is hereby agreed between Cotton & Murray, attorneys for the plaintiffs, and M. O. Penix and J. C. Smith, attorneys for the defendants, that the following is a statement of the material facts in this case and that this statement of the facts may be submitted to the Arkansas Supreme Court upon appeal of this case in lieu of a transcription of the evidence produced in the Boone chancery court upon the trial of the case:

"The plaintiff, Mrs. W. S. Mount, is the owner of the following lands in Boone county, Arkansas, to-wit:

"The south one-half of the NE¼ and the NE¼ of the SE¼ of section 6, township 17, north of range 20 west.

"That the plaintiff, Mrs. Spencer Woods, is the owner of the following lands in Boone county Arkansas, to-wit:

"The SW¼ of the NW¼ and the NW¼ of the SW¼ of section 5, township 17, north of range 20 west.

"That some fifty to seventy-five years ago a public road extended westward from highway No. 7 through other lands and along the center line of said sections five and six, and westward to what is known as White cemetery and White church house; that the portion of said road extending from highway No. 7 to the east line of the Woods' property has long ago been abandoned and enclosed and has not been used for many years; that a public county road and rural mail route now extends north and south along the east boundary line of the Woods' property, intersecting the road in question; that the portion of the road extending from the east line of the Woods' property westward to White cemetery has continued to be used to a limited extent, although the original road bed has become washed out and has grown up in bushes so that in places it is impassable and it has been

necessary to travel along the south bank of the ditch formerly used as the original road bed. There is no record of said road having ever been made a county road by order of the county court, but said road was worked by road overseers with township labor a number of years ago, but has not been worked by public authorities since said gates were put in.

"The road crosses the lands of the plaintiffs, so that each of the plaintiffs owns lands on both the north and south side of said road and the said road terminates at the east line of the Woods' property, where it intersects the above-mentioned public road and mail route; that from 7 to 15 years ago, wire gates were placed across the road in three places, namely: at the east side of Woods' property, at the boundary line between the Woods' property and the Mount property, one-quarter of a mile west from the first gate and another gate one-quarter of a mile west from the last-mentioned gate. These gates were so constructed that they could be opened at one side and permit passage through the same. Anyone traveling the road during this period would open and close these gates in passing through. The gates were erected and maintained by the plaintiffs. The defendants, who live in the vicinity, are the principal persons who have occasion to use said road; that said gates did not remain closed continuously, but were left open during certain seasons of the year, especially during winter months.

"Some time in March, 1939, a question arose between the plaintiffs and the defendants as to the right of the plaintiffs to maintain said gates across said road, whereupon the plaintiffs fastened said gates so that they could not be opened and closed, thus obstructing passageway through said road and making passage impossible without cutting and removing the wire fence. The defendants caused said fences across the road to be cut on various occasions so that they might pass through the same; and this action was instituted in the chancery court of Boone county by the plaintiffs to enjoin the defendants from interfering with said fences. A sketch showing location of said road with reference to the lands

of the plaintiffs and the defendants is hereto attached as exhibit 'A' and made a part of this statement of facts.''

The court found that the appellants were the owners of the land through which the road ran; that some fifteen years ago gaps were placed across said road on the east side of the lands belonging to Mrs. Spencer Woods, and at points on the east side and on the west side of the lands belonging to Mrs. W. S. Mount; that said wire gaps have been maintained across said road for a period of approximately fifteen years, and that people traveling said road have opened and closed said gaps when passing through the same; that said gaps were placed in said positions by the owners of the land, and that the installation and maintenance of said gaps was notice to the. public that thereafter any traveling upon said road was by permission of the owners and not as a matter of right to the public or to any individual traveling said road. The court further found that on March 2, 1939, the appellants closed said gaps and fastened same so that they could not be opened and closed; that said road was never at any time declared a county road, nor maintained by the county; that whatever right was acquired by the public in said road was by prescription, and that whatever right may have, at any time, been acquired by the public by prescription, has been lost and abandoned by the installation and maintenance by said gaps across the road. The court then found that the public should be permitted to travel said road as a matter of prescription, and not as a legal right, and that the gaps should be restored, and appellants should permit passage through the same.

If the right was acquired by prescription, and abandoned as the court found, the court could not give appellees nor the public the right to travel it by prescription.

It appears that the court's conclusion of law is in conflict with his finding of fact. His finding of fact was that whatever right the public had was acquired by prescription, and that the right by prescription has been lost and abandoned by the installation and maintenance of

said gaps across the road. The gaps had been across the road as notice to the appellees and the public for about fifteen years.

"As has been noted, a judgment cannot be supported by conclusions of law inconsistent with the facts found, and the findings of fact will prevail over conclusions of law." 64 C. J. 1261.

Having found that the right to use the road was lost or abandoned, it became the duty of the court to restrain the appellees from cutting the fences and using the road.

We think this case is controlled by the case of *Porter* v. *Huff*, 162 Ark. 52, 257 S. W. 393, where we said: "It is unnecessary to decide whether the public acquired a right to the use of the road as a public road by prescription or seven years adverse possession, for it lost any right it may have acquired by acquiescing in a permissive use thereof for a period of more than seven years after the road was closed by gates. When appellee inclosed his land and placed gates across the road, it was notice to the public that thereafter they were passing through the land by permission, and not by right. The undisputed evidence shows that these gates were maintained by appellee across the road for ten or eleven years, without objection on the part of the public."

Section 1529 of Pope's Digest provides: "When the special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court may give judgment accordingly."

The holding of the court, as a matter of law, that the public and appellees had a right to use this road by prescription, was in conflict with his finding of fact that the right had been abandoned, and the finding of facts must prevail.

The decree of the chancellor is reversed, and the cause remanded with directions to grant the prayer of appellants' complaint, and restrain the appellees from interfering with any of the fences of appellants.